Catron, Judge.
Sampson David, of Campbell county, made .his will in 1826, and shortly’ thereafter died. He left a wife,but no children. By the first clause of his will, he provides for his wife in these words: 1st. “It is my will that my beloved wife, Martha David, have all my estate, both real and personal, during her life, excepting a debt due me by James Chandon,” which he devised to the grand children of his mother, specially.
2. “It is my will that my wife Martha, at her death,. may have full power and authority to dispose of all my personal property, or money, bank stock, &c. (my negro slaves excepted) in any manner she may think proper.”
Sampson David left a considerable personal estate (being a merchant) in store goods, outstanding debts, stock, household goods, farming tools, &c.
His wife was also appointed sole executrix; she qualified and proceeded to carry on the mercantile business as usual, and treated the whole personal properly (except the slaves) as her own absolutely, after paying the debts owing by her husband at his death.
In 1827, Martha David, the wife, died intestate, leaving brothers and sisters. Her husband also left brothers and sisters; the latter are complainants, and the former defendants to this bill, and the question is, did Martha David take an absolute title to the personal property devi *559 sed to her by her husband, or did she take a life estate only? If the former, her distributees are entitled to the property; if the latter, the distributees of the husband “are entitled. The Chancellor below thought the title of Martha David absolute, and dismissed the bill.
Our only business is to ascertain the intention of the testator, Sampson David. By the first clause he gave his wife Martha,-all his property and estate, personal and real, during her life; and the difficulty is, how far the latter clause controls the first. He gives the wife power, at her death, to dispose of all the personal property, (slaves, excepted,) in any manner she might think proper. As to so much of the personal property as was of a perishable nature, and must necessarily have been exhausted in the use, no remainder it is supposed could be limited. The old rule was, that of personal goods no limitation over; could be made. (Bac. Ab. Remainder A. This was an established principle until after the days of Lord Coke. Inroads have since been made upon it, until the exceptions, applying first to one, and then to another species of personal property, are as well settled as the rule; but then the intention of the testator must be plain that he only gives the use of the property to the first taker for life; for if words of enlargement are added, authorising the first taker.to dispose of the property by deed or contract generally for his own use, it is a well settled principle that the first taker has vested in him the absolute title. This court laid down the rule .in Smith vs. Bell and wife to be, “ that a valid executory devise, is such an one as cannot be defeated at the will and pleasure of the first taker by sale, or any other mode of alienation.” To this rule there are the exceptions, of a power given by the will to dispose of the property by deed, or by will, executed in a particular manner. As the intention of the testator in every instance is to be executed, so in case of a limited power of disposition, it is too manifest to admit of doubt, or legal construction; but where a general power of alienation is given in any mode, and to any person, at the will and pleasure of the first taker, the law deems *560 the interest of the remainderman, too uncertain to af „ , , „ , ford it any protection: to impound the property cannot be ¿]one3 because this would violate the intention of the testator, who gave the first taker all his life time to appropriate the entire property.
The first taker, if the remainder be valid, can only have the use for life; but if he, at his discretion, without limitation as to the mode, can by the terms of the bequest destroy the interest in the remainder, it is manifest the testator intended not to limit, him to the use only, but give him the entire interest; for to give property to A for life, to be disposed of as he might think proper by sale, or otherwise, in fee, would be contradictory and absurd; hence a term of enlargement, which gives a general power of bargaining and selling in fee by the first taker, is deemed in law to communicate the whole estate. The terms employed in Sampson David’s will, fall clearly and plainly within this rule, except that he says, “my wife Martha, at her death, may have full power and authority to dispose of all my personal property, or money, bank slock, &c. in any manner she may think proper.” If the words, “at her death,” had been left out of the will, the case would be free from all difficulty. That Martha David had the right to use the property, without any right on the part of the distributees of Sampson David to impound it during her life time, is, we think, incontrovertible ; that she could sell, give away or destroy it, without legal restraint or molestation by complainants, follows; and that a sale or gift of the property, at any period during her life, would have been in effect, a disposition at her death, (because then, as well as previously, a subsisting alienation,) we have no doubt.
The intention of the testator, it is our object and bu-sinessto ascertain. Judging from the circumstances and situation of Sampson David, and his wife Martha, at the time his will was made, and it is to our minds hardly possible to believe, that he intended this objeci of his bounty and affection, should in her declining years, submit to the drudgery of managing and nursing his estate, (to do *561 which the few years she had to live by the course of nature, would hardly have been sufficient to complete the administration,) without the power to touch a penny of it, save the issues and profits, until the day of her deaths when by testamentary disposition, she would have had the melancholy consolation of providing for those, in reference to whom she saw proper to die intestate. It never came into his mind to trammel his wife to the day of her death with the care of his property, holding it as a trustee, for the ultimate benefit of distant relations. She had helped him to acquire it, they were childless, and it is perfectly manifest from the whole tenor of Sampson David’s will, that his wife’s future comfort was the only object of his solicitude, aside from his slaves, whom he directed to be carried to a non-slave holding state, and emancipated. As some authority, to prove that the words, “dispose of at her death in- any manner she may think proper,” carry the fee the same as if the words, “at her death,” had been left out of the will, we refer to the cases of Goodtitle vs. Otway, (2 Wils. 6,) Turnwell vs. Perkins, (2 Atk. 102,) Robertson vs. Dusgale, (2 Ver. 181,) Pushman vs. Filliter, (3 Ves. 7. In these wills, the words were, 1. The testator devised his lands to Agnes Pearson, for and during her life, and after her death to her lawful issue, and if she shall have no issue, she shall have power to dispose thereof at her will and pleasure. (2 Wils. 6.
2. I give my house to A. for her own use, to give away at her death, to whom she pleases. (2 Atk. 182.
3. To A. for life, remainder to B. in fee, he paying £400, whereof £200 to be at the disposal of my wife? in and by her last will and testament, to whom she shall think fit to give the same. (2 Ver. 181.
4. All my household goods, furniture, ready money, securities for money, stock in trade, &c. I give, devise and bequeath unto my said wife Mary Pushman, desiring her to provide for my daughter Anne . out of the same, as long as my said wife shall live, and at her decease to dispose of what shall be left among my children in such manner as she shall judge most proper. (3 Ves. 7. In *562 the foregoing cases, the devisees were declared to hold in o o ’ fee5 because powers to dispose of the fee, and destroy the remainder, were given.
The cage of Goodtitle vs. Otway, is not distinguishable from the present, except that any issue Agnes Pearson might have were provided for; she had none, hence the contingent remainder did not vest, and the power to dis. pose of the estate at her will and pleasure, was holden to carry the fee, although the first part of the clause gave the estate for life only.
In Shermer vs. Shermer’s Executors, (I Washington’s Rep. 266,) John Shermer, by his will devised to his wife the use and profits of his whole estate both real and personal, duringher natural life,and after thatwas ended,then the whole of his estate tobesequally dividedbetween whomsoever his wife should think proper to make her heir or heirs, and his brother Richard Shermer. The supreme court of Virginia declared the wife (who died intestate) took the fee to the moiety, and decreed it to her heirs and distributees. The provisions ofthe wills and the circumstances of the parties, were the same in that case and in the present.
If Martha David as devisee of her husband, could law. fully part with the property bequeathed (and now m controversy) at every period after S. David’s death, and communicate a good title to the purchaser, it follows, that she had the power as effectually to defeat the estate in remainder, as if the words at her death,” had not been inserted in the will. To test this, we will suppose she had sold as devisee, to A, part of the property, (and she sold as owner much of it,) and after her death, A had been sued by the administrator de bonis non of Sampson David, the defendant A, relying upon his title acquired from Martha David, not as executrix, but as devisee of her husband; such a case would present an alienation subject to no legal objection when made, and good and subsisting at the death of Martha David, at which time she accorded to the tranfers her sanction. This would have been a disposition of the property at her death, with *563 in the meaning of the will, and a good execution of the power. The legal effect therefore of the bequest is the same as if Sampson David had given to his wife his property for life, to be disposed of in any manner she might think proper, which would have vested the absolute title, as is admitted on all hands.
Did Sampson David die intestate in reference to his slaves? He devised them to his wife during life, if she should die before 1840; on her death, or in any event, on the first of January, 1840, he vested them in trustees in remainder, to be hired out until a sufficient sum was earned to transfer them to some colony or state where freedom was allowed or tolerated, and directed them to be emancipated. After the death of Martha David, the trustees assumed the duties of the trust, took the slaves into their possession, and hired them out.
This disposition violated no law or policy of Tennessee, and cut off all pretence of claim on the part of the distri-butees of Sampson David. They charge the trustees with an unfaithful execution of the trust. It matters nothing to them; they have no interest,and consequently no right to complain.
It is insisted the property should be taken out of the hands of the administrator of Martha, and placed in the hands of Sampson David’s administrator, de bonis non; because the latter may be sued, plead fully administered, and the real estate in possession of complainants, as heirs of Sampson David, be sacrificed by the creditors. The administrator of Sampson David is not sued; it is even uncertain, whether any debts are outstanding against him as administrator. The contingency is too remote for this court to notice it; when the supposed case arises, it will be time for a court of equity to interpose its powers. Dismiss the bill and affirm the decree of the chancellor.
Peck, Judge, concurred.